**DALE A. BLICKENSTAFF - #40681**
Attorney At Law
7081 N. Marks Avenue, # 104
Fresno, California 93711
(559) 389-0239 Telephone
(559) 436-0207 Facsimile
Email: dabnabit74@gmail.com

Attorney for Defendant, ROGER SHANE JOHN

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 1:17-CR-00289** |
| **Plaintiff,** | **SUPPLEMENTAL SENTENCING MEMORANDUM** |
| **vs.** | **DATE:** **June 22, 2020** |
| | **TIME:** **10:00 a.m.** |
| **ROGER SHANE JOHN** | **COURT:** **Hon. Dale Drozd** |
| **Defendants.** | |

    Defendant, Roger Shane John, by and through his attorney, Dale Blickenstaff, submits this supplemental memorandum to his previous sentencing memorandum for the Court's consideration.

## CASE STATUS

    On June 13, 2018, Mr. John was to be sentenced for his earlier admission of one count of pointing a laser at an aircraft. Instead, the court ordered Mr. John be released to the supervision of Pretrial Services so that he could be monitored as he attended the program at Delancey Street in San Francisco, CA. He entered that program on June 15, 2018, and remained there until he walked away on December 14, 2019. He was arrested on January 6, 2020, held in the Northern District for a few days and then scheduled for his initial appearance in the Eastern District on January 17, 2020. Because counsel for Mr. John was unavailable, his appearance

was continued to January 24, 2020. Thereafter, Mr. John's initial appearance was continued a multitude of times due to a quarantine for a mumps outbreak in the Fresno County Jail. Finally, he was arraigned on the pretrial release violation on May 6, 2020, when he admitted the violation.

## BACKGROUND

Mr. John was arrested on October 22, 2017, the same day the instant offense occurred. As of the date of sentencing, June 22, 2020, he will have been in custody for about 14 months and at Delancey Street for 18 months, a total time of 32 months. It should be noted, he was gone from Delancey Street for about 3 days before enrolling in the substance abuse program at the Salvation Army in SF on December 17, 2020, where he stayed about 20 days until his arrest there by US Marshals.

The reason Mr. John walked away from Delancey Street after completing 18 months of a 24 month program was not because he fraternized with a female patient, rather, it was because he was never allowed to enroll in a parenting class which was required before child visitation could occur. It is true, Mr. John had a brief romantic relationship with a female patient but that fact was discovered, admitted to and punished for well before he decided to leave the program. What is also true is that Mr. John is very close to his two children, Leyla, age 13, and Romero, age 7. Delancey Street has a rule which requires an admittee to complete a parenting class before visits with children are allowed. With Christmas approaching in November and early December of 2019, Mr. John asked again to be allowed to commence the class which would have qualified him to see his children during the upcoming holiday. Inexplicably, his supervisor denied him enrollment which was not the first time. Because of the perceived unfairness and his desire to see his children, he walked away from the program on December 14, 2019. He was able to beg enough money for a BART ticket to Pleasanton where he took a bus to Amtrak in Stockton where he boarded a train to Modesto. He called his brother for a ride to his father's home where he was able to spend time with his children. Please see **Exhibit A**, which is an emailed letter from Mr. John's brother to counsel dated February 10, 2020. After discussion with family members, Mr. John thought it prudent to return to a residential program for substance abuse but not one whose rules prevented family visits. Accordingly, his brother drove him back

to San Francisco to apply for admission to the 6-month inpatient program at the Salvation Army.  After arriving too late for admission, he was told to return the next day which he did and was admitted.  Upon admission, tests for drug and alcohol use were administered which disclosed that no such substances were used during the two- and one-half day hiatus.  Please see **Exhibit B** which is a letter from Salvation Army dated January 7, 2020.  Mr. John attended the Salvation Army program for about 20 days before being arrested and returned to the Eastern District.  He and his family made no secret of these events and counsel notified Pretrial Services of his whereabouts and the reasons for his decisions. Please see **Exhibit C** which is an email dated 12/20/2019, to Pretrial Services.

## ARGUMENT

At the hearing where the Court continued sentencing to allow Mr. John to attend Delancey Street, the Court stated that in the event he failed in the program, the Court "would almost certainly impose the sentence that was being recommended..."  By using those words, the defense believes there may be circumstances where the Court would impose a different sentence from the one recommended.  Mr. John's motivation for leaving was not a desire to return to his prearrest lifestyle of drug use and disobedience.  His statement "But I'm ready to change my life around", (Please see Reporter's Transcript at 6 ll 13) is not inconsistent with what he did in this matter.  Instead of just disappearing, he came back to a residential program within 3 days. Leaving Delancey Street without reason is one thing but leaving because of perceived unfairness and then, almost immediately, enrolling in another similar program is quite another.  Admittedly, he should have contacted Pretrial Services with his complaint but his desire to see his children overwhelmed his better judgement. In hindsight, it would have been better if he swallowed his sense of unfairness and just stayed in the program another six months without seeing his kids.  The question is should his choice, albeit a violation, result in a 41-month prison term?

Since his original arrest in Modesto for the instant offense, Mr. John has been in custody and attending programs for a total of about 33 months (14 months in jails and 18 months in Delancey Street and about 20 days in Salvation Army). He is aware he may not receive time credits for the time spent in programs but if he was credited with that time, the additional time

on a 41 month sentence would be 8 more months and the additional time on a 33 month sentence would be time served. With that said, Mr. John wishes to be returned to complete the program at the Salvation Army where he will remain in residence for at least 6 months. Please see **Exhibits D** and **E** which are letters from the Salvation Army re his admission to their program.

Lastly, Mr. John is 34 years old and has admitted his previous use of methamphetamine and has professed to wanting a better life. The Court observed at the sentencing hearing which was continued, "Well, when I look at the prior record, I think it's mostly methamphetamine related." RT 9 line 11. Further, the Court said, "I do think, from looking at it, it looks to me like even all the domestic violence...it would certainly seem to me from the circumstances that it's all tied up in his methamphetamine addiction, which is longstanding." RT 9 lines 16-20. By his leaving Delancey Street, Mr. John made a judgment call which violated the court's order but it was not a retreat from his choice to be a better person. He demonstrated the validity of that choice by enrolling in a new program. Please see **Exhibits F and G** which are letters from Mr. John and his daughter, Leyla.

### <u>CONCLUSION</u>

Mr. John requests that he be allowed to attend and complete the 6-month substance abuse program at the Salvation Army in San Francisco, CA.

Dated:  June 15, 2020

By  /s/ *Dale A. Blickenstaff*
DALE A BLICKENSTAFF, Attorney for
Defendant, ROGER SHANE JOHN